United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 1, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-50361

DONALD LOREN ALDRICH,

Petitioner-Appellant,

VERSUS

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
For the Western District of Texas, San Antonio Division

(SA-99-CA-171-IV)

Before JONES, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Donald Loren Aldrich ("Aldrich") filed an application for federal writ of habeas corpus in the Western District of Texas. On February 24, 2003, the district court entered a judgment denying his petition for writ of habeas corpus and refusing to issue a certificate of appealability ("COA"). Aldrich subsequently filed

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

with this court seeking a COA.  We deny his request.

## I.  BACKGROUND

Aldrich was convicted of capital murder and sentenced to death on August 9, 1994 for the November 30, 1993 murder of Nicholas West.  On November 30, 1993, Aldrich and two friends decided to go "queer-bashing," using procedures similar to those they had employed at least twice in the past to rob and assault persons they believed to be homosexual.

The three of them drove to Bergfeld Park, which they believed to be a homosexual meeting spot in Tyler, Texas, where they robbed Nicholas West at gunpoint.  After robbing West of his money and vehicle, they forced him into their automobile and drove to a remote area of Smith County.  They then forced the victim to walk up a hill, where Aldrich and another one of the assailants shot him at least nine times with two .357 handguns.  Aldrich fired at least three shots into the victim.

After a change of venue from Smith County, Texas, to Kerr County, Texas, Aldrich was convicted of the murder of Nicholas West.  Following a separate punishment hearing, the trial court sentenced Aldrich to death.  Aldrich appealed to the Texas Court of Criminal Appeals, which affirmed his conviction and sentence.  *See Aldrich v. State*, 928 S.W.2d 558 (Tex. Crim. App. 1996).  Aldrich then petitioned for state habeas relief, to no avail.

2

Aldrich initiated federal habeas proceedings on June 16, 1998. On February 24, 2003, the district court entered a judgment denying Aldrich's petition for writ of habeas corpus and denying Aldrich a certificate of appealability. Aldrich timely appealed.

## II. STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) states that federal habeas petitioners must demonstrate that the state court's adjudication was either "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

To obtain a COA, the petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claim or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

## III. ANALYSIS

A.   Basis of Aldrich's Claims

At the penalty phase of the trial, the jurors were charged with answering certain questions to determine whether Aldrich would be put to death or given a life sentence.  The threshold question was whether, if not sentenced to death, Aldrich would probably "commit criminal acts of violence that would constitute a continuing threat to society."  TEX. CODE CRIM. PROC. ART 37.071, § 2(b)(1).  The jury found, beyond a reasonable doubt, that the answer to this question was yes.

Aldrich offered evidence to show he would not be violent in prison, mainly by showing his nonviolent prison record.  The prosecution argued that, because Aldrich's chosen victim pool consisted of homosexuals, he would be likely to perpetrate violent crimes against homosexuals in prison.  The jury was also shown the unedited version of Aldrich's videotaped confession in which he confessed to his participation in multiple violent crimes.

Aldrich's bases for appeal here surround the possibility that, if not sentenced to death, Aldrich would have been eligible for parole in 35 years and thus could theoretically constitute a danger to society beyond prison.  Texas does not have the option of life without the possibility of parole.  During the closing argument by Aldrich's attorney at the penalty phase, the following exchange occurred.

Defense:      You're not going to have to worry about Mr.

4

|             | Aldrich being on the streets of Kerrville.... You're not going to find him here, because he's going to be in prison with a life sentence at least, okay. So when you're defining who he's going to be a danger to, you don't have a choice. You have to define where he is and he's going to be in prison. |
|-------------|-------------|
| Prosecutor: | Judge, I'm going to object to that. That's outside the record and incorrect. I object to it. |
| Court:      | I'll sustain the objection. |
| Defense:    | Which part of it, Your Honor? We feel like we have a right to argue he's going to be in prison for life. |
| Court:      | I think you've got a right to argue that he's going to be in prison. |
| Defense:    | All right. |
| Prosecutor: | My objection is, he's standing up there arguing to the jury that he's going to be in prison for life. That's my objection. |
| Defense:    | It's a life sentence, Your Honor. |
| Court:      | There's a difference between a life sentence. I'll sustain the objection as to being in prison for life. A life sentence, yes. You can talk about that. |
| Defense:    | He's going to be in there for a life sentence. I'm going to state this the way that [the prosecutor] and the Court asked me to. You're not going to have to worry about him. People of Tyler and Smith County are not going to have to worry about him.... |

Thus, defense counsel at trial attempted to argue that Aldrich would necessarily be in prison for the rest of his life, an argument that is incorrect. The court sustained the prosecution's objection to this argument, but allowed defense counsel to argue that Aldrich would have a life sentence. Aldrich also argues that the trial court prevented him from introducing evidence to show that he would not be eligible for parole for 35 years, but, as discussed below, his citations to the record do not support this

5

assertion.

B.   Aldrich's Arguments

Aldrich seeks a COA on three closely-related arguments.  He argues that the trial court's refusal to permit testimony, judicial instruction, or argument as to his 35 year period of ineligibility for parole violated his constitutional rights.  Aldrich maintains that this prevented him from (1) meeting or rebutting damaging evidence in violation of his Fourteenth Amendment right to due process; (2) bringing evidence to the jury relevant to a death penalty issue that is mitigating in violation of the Eighth Amendment; and (3) making a complete defense in violation of his Sixth Amendment rights.  He concedes that the "rubric is basically the same whether the issue is analyzed as a Sixth Amendment, an Eighth Amendment, or a Fourteenth Amendment question."

As Aldrich concedes, his Eighth and Fourteenth Amendment claims are foreclosed by this circuit's precedent.  *See, e.g., Tigner v. Cockrell,* 264 F.3d 521, 525 (5th Cir 2001).  Thus, the state court's actions here were obviously not contrary to clearly established federal law.  We need not grant COA because, in light of this circuit's precedent, reasonable jurists would not conclude the issues presented are adequate to deserve encouragement to proceed further.

But this court has not yet addressed Aldrich's Sixth Amendment permutation of this argument.  In *United States v. Scheffer*, the

Supreme Court stated that state lawmakers "have broad discretion to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate' to the purposes they are designed to serve." 523 U.S. 303, 308 (1998). The suppression of evidence may be unconstitutional where it infringes on a weighty interest of the accused. *Id.*

Aldrich argues that, under the *Scheffer* balancing test, his weighty interest in introducing evidence that he would not be eligible for parole for 35 years outweighs the state's interest in excluding such evidence regarding parole eligibility. But, again, Aldrich has not indicated any point in the record in which the trial court judge prevented him from introducing evidence regarding his 35-year ineligibility for parole. In arguing that the trial court prevented him from introducing such evidence, Aldrich cites to the following: (1) a pretrial motion to set aside the indictment in which he argued that the Texas capital punishment scheme violated the federal constitution, (2) an objection to the punishment phase instructions in which he objected to the charge not including information about the parole implications of a life sentence, and (3) the jury charge from the punishment phase which instructs the jurors not to consider the manner in which the parole law would be applied.

The pretrial motion regarding the constitutionality of the

7

Texas capital punishment scheme clearly fails to indicate that the trial court judge refused proffered evidence. The fact that the jury charge didn't include information about the parole implications of a life sentence similarly does not indicate that such evidence could not have been adduced at trial. The jury charge instructing the jurors not to consider the manner in which parole law is to be applied is consistent with the then-longstanding Texas practice designed to prevent jurors, functioning within the judicial branch, from attempting to anticipate how the executive branch would apply parole factors, in violation of the Texas constitution. In arguing that his Sixth Amendment rights were violated, Aldrich actually attempts to distinguish this inquiry from simply telling the jury he would be ineligible for parole for 35 years. In any event, Aldrich still does not indicate any point at which proffered evidence as to the mandatory 35 year period of parole ineligibility was rejected by the trial court. Thus, Aldrich has not stated a basis for a Sixth Amendment claim.

Also, as Aldrich admits, the Sixth Amendment analysis is much the same as under the Fourteenth and Eighth Amendments, and this court has consistently stated that a defendant is only entitled to a jury instruction regarding parole ineligibility if there exists a life-without-possibility-of-parole alternative to the death penalty, which does not exist under Texas law. *See, e.g., Tigner*, 264 F.3d at 525. The argument that this court should develop a

8

constitutional rule contrary to these holdings is foreclosed by the non-retroactivity rule of *Teague*. *Teague v. Lane*, 489 U.S. 288 (holding that new rules of constitutional law should generally not be applied on collateral review).

Thus, Aldrich does not state the proper basis for a Sixth Amendment claim, and such claim would in any event be barred by *Teague*. The state court's actions here were not contrary to clearly established federal law. This court need not grant COA because reasonable jurists would not conclude the issues presented are adequate to deserve encouragement to proceed further.

CONCLUSION

For the reasons outlined above, we DENY Aldrich's request for a COA.

DENIED.